IN THE
UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.  : | Criminal No. 3:10CR2 |
| : | |
| GARY LEE RIMMER : | |

SENTENCING MEMORANDUM

COMES NOW the defendant, GARY LEE RIMMER ("Rimmer"), by counsel, and states to this Honorable Court that he intends to recommend that the Court vary from the sentencing guideline recommendation and impose a sentence of 60 months. In support of this recommendation, the defendant states the following:

**PROCEDURAL HISTORY**

On January 27, 2010, a grand jury indicted Rimmer for one count of possession of child pornography occurring "in or about and before February 2008." On June 9, 2010, a grand jury issued a superseding indictment that charged Rimmer with Count One: distribution of child pornography on July 9, 2007 and with Count Two: possession of child pornography on February 14, 2008. Count One carries a range of punishment of five to twenty years, and Count Two carries a range of punishment of zero to ten years.

Rimmer was arrested on February 3, 2010 after the issuance of the first indictment and has been detained ever since that time. On July 30, 2010, Rimmer pleaded guilty to both counts of the indictment.

A sentencing hearing on this matter is scheduled for November 8, 2010 at 9:50 a.m.

**SENTENCING AUTHORITIES**

As this Court well knows, a district court should not determine the appropriate sentence by the mechanistic application of a given sentence to a given category of crime; rather, a sentencing court has the duty to ensure the sentence imposed is tailored to the individual before it:

> Punishment should fit the offender and not merely the crime. The belief no longer prevails that every offense in a like legal category calls for an identical punishment without regard to the past life and habits of a particular offender.

*Williams v. New York*, 337 U.S. 241, 247 (1949); *see also United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009)(citing *Gall v. United States*, 522 U.S. 38, 128 S.Ct.586, 597 (2007)("When rendering a sentence, the district court 'must make an *individualized* assessment based on the facts presented.'"). Indeed, with the watershed decision of *United States v. Booker*, 543 U.S. 220 (2005), the question of *whether* prison is *necessary* for a particular individual returns to a place of primacy in the sentencing decision. A court must impose the *minimum* term necessary to comply with the goals of sentencing, i.e., just punishment, deterrence, protection of the public and rehabilitation of the defendant, taking into consideration all factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3553(a)(2).

The Supreme Court recently directed that a "district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however." *Gall v. United States*, 552 U.S. 38, 49 (2007). Although the Guidelines provide an initial benchmark, "the sentencing court may not presume that the Guidelines range is reasonable." *United States v.*

*Pauley*, 511 F.3d 468, 473 (4th Cir. 2007)(citing *Gall*, 552 U.S. at 50). Further, while a court is required to give consideration to the Guidelines, "*Booker* 'permits the court to tailor the sentence in light of other statutory concerns as well.'" *Kimbrough v. United States*, 552 U.S. 85, 101 (2007)(citing *Gall*, 552 U.S. at 46, and quoting *United States v. Booker*, 543 U.S. at 245-46).

As set forth below, after considering the sentencing guidelines and the statutory sentencing factors, a sentence of five years (60 months) is tailored to Rimmer's particular circumstances and is sufficient but not greater than necessary to satisfy the purposes of sentencing.

## ARGUMENT

I. **Consideration of 18 U.S.C. 3553(a) factors supports a five-year sentence**

   A. <u>**Nature and Circumstances of the Offense and History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))**</u>

Rimmer is 56 years old. He is the oldest of three children born to his parents and grew up with his parents and siblings in Richlands and Covington, Virginia. He was physically abused by his father as a child. He was also sexually abused by a neighbor as a child. He left the family home at age 18 and supported himself and his family for many years working in grocery and other retail stores in the Charlottesville area. He has no criminal history. He has a history of mental health problems including depression, and beginning in 2008 began receiving Social Security disability.

Rimmer's mother died in 2005, and Rimmer suffered depression after her passing. In 2006, soon after his mother's passing, his youngest daughter, who had been living with him, graduated from high school and began making arrangements to move out of his household and live on her own. Rimmer felt old, lonely, and depressed and began using the internet to

communicate with others through social networking sites and internet chat rooms. It is during this time that he began chatting over the internet with the Florida girl as outlined in the PSR, pp. 3-4. He portrayed himself as a 20-year old man on a fictitious MySpace page. At the time they began communicating, the Florida girl had portrayed herself as being 18-years old on her MySpace page. At some point during their communications, however, Rimmer learned she was under age 16. In addition to portraying himself as a 20-year old man with the young lady from Florida, Rimmer also engaged in numerous internet chats with other people. He sometimes chatted using his correct name and age. Other times he engaged in chats using various other fictitious persona – sometimes he portrayed himself as a man and sometimes as a woman; however, he always portrayed himself as being over 18-years old. He engaged in these internet conversations as a way to fill the void of loneliness. It is significant to note that Rimmer never made any effort to go to visit the Florida girl or to encourage her to visit him.

     Rimmer moved from Greene County, Virginia back to Covington, Virginia in October, 2007, to help care for his ailing, elderly father. At that time, his computer was broken and he did not have internet service in Covington and has not used his computer at all since leaving Greene County in October, 2007. In fact, at the time the search warrant was executed in February, 2008, Rimmer's computer was not hooked up. Although Rimmer still had some telephone contact with the young lady from Florida after he moved from Greene County to Covington, once back in Covington he met and began a romantic relationship with an age-appropriate, 49-year old woman. Rimmer has not used *any* computer nor had any contact with the young lady from Florida since law enforcement conducted a search warrant at his residence in Covington on February 14, 2008. Rimmer cooperated with the police at the time of the search and subsequent

to the search he voluntarily met with and was interviewed by the United States' Attorney's office in May, 2009.

Rimmer was not indicted until February, 2010. During the two years between the time the search warrant was conducted at his residence and the indictment, Rimmer stayed off the computer and stayed out of trouble. He has been in custody since the date of his arrest on February 3, 2010, and during his incarceration at the Albemarle-Charlottesville Regional Jail, Rimmer has made the most of his incarceration by participating in the "Celebrate Recovery Inside" program at the jail. Celebrate Recovery Inside is a faith-based program that helps inmates apply biblical principals to grow spiritually and become free from their addictive, compulsive and dysfunctional behaviors. Additionally, Rimmer has participated in numerous Bible study courses while incarcerated and has received more than eight correspondence course certificates of completion. Rimmer has thrived in the Celebrate Recovery and Bible study programs and is committed to using the principals that he has learned from these programs when he is ultimately released from incarceration to help him live a faith-based, law-abiding life.

   **B.**  **Just Punishment (18 U.S.C. § 3553(a)(2)(A))**

The present offense is a serious offense for which Rimmer needs to be punished. However, considering the circumstances surrounding his involvement in this offense as described above and considering that he had not used his computer for approximately five months before the police conducted a search at his house and that he stayed out of trouble for two years before he was even indicted, a sentence of five years is adequate to reflect the seriousness of his offense and justly punish him. A period of supervision following his incarceration will serve to allow him to have the appropriate guidance, discipline and structure that will help him rehabilitate

himself and be a productive member of society

### C. Adequate Deterrence (18 U.S.C. § 3553(a)(2)(B))

A sentence of five years is sufficient to deter both Rimmer and the public from committing further crimes. Rimmer has no criminal record and has never been incarcerated before. It is obvious that his initial contact with law enforcement in February, 2008 deterred him from both further computer use and further criminal conduct..

### D. Protection of the public from further crimes (18 U.S.C. 3553(a)(2)(C))

Rimmer's age[1], his employment status[2], his marital status[3], and his past criminal record, among other things, all suggest that Rimmer is a low risk to re-offend. USSC, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 11-12 and Ex. 9-10 (2005). Since Rimmer is unlikely to re-offend, there is little need to protect society from further crimes by him by imposing more than five years.

The current annual cost of imprisonment in the Bureau of Prisons is $24,443.04 per inmate, which is almost eight times the cost of supervision, at $3,535 per inmate. Presentence Investigation Report ("PSR") ¶ 46. In light of the slight need to protect the public from further crimes by Rimmer, it is appropriate to compare this financial cost of imprisonment to the

---

[1] Offenders over age 50 at sentencing have a recidivism rate of only 9.5%. More particularly, offenders over age 50 and in Criminal History Category I have a recidivism rate of only 6.2 %.

[2] Offenders with stable employment in the year prior to their instant offense are less likely to recidivate than those who are unemployed (32.4% versus 19.6%).

[3] Offenders who have never married are most likely to recidivate (32.3%). Those who have a legal marriage have a 13.8% recidivism rate and those who are divorced have a lower rate of recidivism (19.5%).

questionable benefit of a sentence longer than five years. Both Rimmer and the public would be better served by imposing a period of supervised release after he completes a five-year sentence.

      E.      **Rehabilitation (18 U.S.C. § 3553(a)(2)(D))**

18 U.S.C. § 3553(D) requires the court to consider the need for the sentence to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. As the Presentence Investigation Report documents, Rimmer has a history of mental health issues. PSR, p. 7. While he can receive treatment in the Bureau of Prisons, it is far more cost-effective for Rimmer to participate in treatment at the community level while on supervised release.

## II. Calculation and Consideration of the Sentencing Guidelines

The presentence investigation report calculated the sentencing guidelines by determining that the base offense level found in U.S.S.G. § 2G2.2(a)(2) was 22. A number of specific offense characteristics applied, including two points for material involving a prepubescent minor (§2G2.2(b)(2)); two points for distribution of child pornography (§2G2.2(b)(3)(F)); two points for use of a computer (§2G2.2(b)(6)); and two points for at least ten but fewer than 150 images (§2G2.2(b)(7)). Rimmer qualified for a three level reduction for acceptance of responsibility, and, accordingly, the total offense level was 27.

Rimmer has a Criminal History Category of I.

Based on a total offense level of 27 and a Criminal History Category of I, Rimmer's sentencing guideline range is 70-87 months.

      A.      **Section 2G2.2 Was Not Developed Pursuant to the Sentencing Commission's Characteristic Institutional Role**

Section 2G2.2 is a guideline that is "fundamentally different" from most other guidelines

and, unless it is "applied with great care," it can lead to unreasonable sentences that are inconsistent with what § 3553(a) requires. *United States v. Dorvee*, 616 F.3d. 174, 184 (2nd Cir. 2010). Sentencing Guidelines are usually developed by the Sentencing Commission using an empirical approach based on data about past sentencing practices. *See Rita v. United States*, 551 U.S. 338, 349 (2007). In the formulation of the child pornography guidelines, however, the Commission did not use this empirical approach; instead, the Commission has amended the Guidelines under § 2G2.2 several times since their introduction in 1987, specifically responding to the direction of Congress and each time recommending harsher penalties. *See* United States Sentencing Commission, *The History of the Child Pornography Guidelines*, Oct. 2009, *available at* http://www.ussc.gov/general/20091030_History_Child_Pornography_Guidelines.pdf. When §2G2.2 was created in 1987, it had a base offense level of 13 and contained only two enhancements, one for material depicting a child less than twelve years old (two levels) and one for the retail value of the material distributed (at least five levels). *United States v. Grober*, Nos. 09-1318, 09-2120, 2010 WL 4188237 (3rd Cir. Oct. 26, 2010), at *9. The Commission promulgated § 2G2.4 in 1991 to address the new federal crime of possession of child pornography and proposed to set the base offense level at 10 (eight levels lower than it is today), and the Commission only included an enhancement for material depicting a prepubescent minor (two levels). *Id*. Some Members of Congress expressed concerns that these guideline ranges were not enough for the "smut peddlers" and "pedophiles" that committed these offenses; however, the Commission defended the Guidelines and noted that the guidelines "continue to require substantially tougher penalties than typically were imposed under pre-guidelines practice." *Id*. Despite the Commission's position, Congress specifically directed the

Commission to make a variety of changes to § 2G2.2 and § 2G2.4, including raising the base offense levels to at least 15 and 13, respectively. *Id*.

In 1995, Congress specifically directed the Commission to raise the base offense levels for child pornography offenses again by at least two levels and to include at least a two-level enhancement if a computer was used. *Id*. at *10. The Commission followed Congress' directives but expressed concern that the computer enhancement would apply broadly and would not differentiate between offenders who used a computer to widely disseminate child pornography and those who "email[ed] images to a single voluntary recipient." *Id*. (citing United States Sentencing Commission, *Report to Congress: Sex Offenses Against Children* at 30 (June 1996) , available at http://www.ussc.gov/r_congress/SCAC.pdf.

In 2003, Congress again made several significant changes to the child pornography guidelines in the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act ("PROTECT Act"). Specifically, the PROTECT Act added the "image table" to both § 2G2.2 and § 2G2.4, which raised the offense level between two- and five-levels based on the number of images at issue. The Act also created a five-year mandatory minimum sentence for receipt and trafficking and raised the statutory maximum sentence for possession from five to ten years and from fifteen to twenty years for receipt and trafficking. The PROTECT Act was the first and only time to date that Congress directly amended the guidelines. *The History of the Child Pornography Guidelines* at 38. Former United States Attorney for the Eastern District of New York, Alan Vinegrad, noted that the PROTECT Act is the "most significant effort to marginalize the role of the Sentencing Commission in the federal sentencing process since the Commission was created by Congress." *Dorvee*, 616 F.3d 174, 185 (2nd Cir. 2010)(quoting Alan

9

Vinegrad, *The New Federal Sentencing Law*, 15 Fed Sent'g Rep. 310, 315 (June 2003)).

Effective November 1, 2004, the Commission consolidated § 2G2.4 into § 2G2.2, and in response to the new minimum and maximum penalties set higher base offense levels for possession (increased from 15 to 18) and trafficking/distribution (increased from 17 to 22). *Grober* at *10. These new base offense levels were set *below* the mandatory minimum because "a majority of offenders sentenced under §2G2.2 were subject to specific offense characteristics that increased their offense level." *The History of the Child Pornography Guidelines* at 46 (citing the enhancements for computer use and material involving a prepubescent child, to which, at the time, 89.4% and 91.4% of offenders, respectively, were subject). The Commission was "concerned that setting the base offense level any higher than 22 for trafficking and receipt offenses would affect the proportionality of other guidelines." *Id.* at 47-48.

In sum, the current child pornography guideline is largely the product of Congressional directives, some of which were actively opposed by the Sentencing Commission, rather than Commission study and expertise. *United States v. Diaz*, No. 09-cr-302, 2010 WL 2640630 (E.D. Wis. June 30, 2010), at *3. The Supreme Court has held that a sentencing judge need not defer to such a guideline. *See Kimbrough*, 552 U.S. at 109-110. Indeed, judges across the country have recognized the flaws in this guideline and declined to impose a sentence within the range it recommends. *See, e.g., United States v. Diaz*, 2010 WL 2640630, at *3 (E.D. Wis., 2010); *United States v. Tews*, 2010 WL 1608951, at *3 (E.D. Wis., 2010)(*citing United States v. Howard*, 2010 WL 749782(D. Neb. Mar. 1, 2010); *United States v. Manke*, 2010 WL 307937 (E.D. Wis. Jan. 19, 2010); *United States v. Raby*, 2009 WL 5173964 (S.D.W.Va. Dec. 30, 2009); *United States v. Burns*, 2009 WL 3617448 (N.D.Ill. Oct. 27, 2009); *United States v. McElheney*,

630 F.Supp.2d 886 (E.D. Tenn. 2009); *United States v. Phinney*, 599 F.Supp.2d 1037 (E.D.Wis. 2009); *United States v. Grober*, 595 F.Supp.2d 382 (D.N.J. 2008); *United States v. Stern*, 590 F.Supp.2d 945 (N.D. Ohio 2008); *United States v. Doktor*, 2008 WL 5334121 (M.D.Fla. Dec. 19, 2008); *United States v. Johnson*, 588 F.Supp.2d 997 (S.D. Iowa 2008); *United States v. Noxon*, 2008 WL 4758583 (D.Kan. Oct. 28, 2008); *United States v. Ontiveros*, 2008 WL 2937539 (E.D. Wis. July 24, 2008); *United States v. Hanson*, 561 F.Supp.2d 1004 (E.D. Wis. 2008); *United States v. Shipley*, 560 F.Supp.2d 738 (S.D. Iowa 2008); *United States v. Baird*, 580 F.Supp.2d 889 (D.Neb. 2008). Several circuit courts have upheld these rulings. *See e.g. United States v. Dorvee*, 616 F.3d 174 (2nd Cir. 2010); *United States v. Grober*, Nos. 09-1318, 09-2120, 2010 WL 4188237 (3rd Cir. Oct. 26, 2010). Accordingly, the court should give little weight to the sentencing guideline recommendation in Rimmer's case.

  **B.**  <u>**Specific Offense Characteristic Enhancements**</u>

  Rimmer received a number of specific offense characteristic enhancements to his base offense level that apply in *nearly all* cases. Of all sentences under § 2G2.2 in 2009, 94.8% involved an image of a prepubescent minor (qualifying for a two-level increase pursuant to § 2G2.2(b)(2)), 97.2% involved the use of a computer (also qualifying for a two-level increase pursuant to § 2G2.2(b)(6)), and 96.6% of defendants received at least a two-level enhancement based on the number of images possessed. *See Dorvee*, 604 F.3d at 96; United States Sentencing Commission, *Use of Guidelines and Specific Offense Characteristics for Fiscal Year 2009*, available at http://www.ussc.gov/gl_freq/09_glinexgline.pdf. In addition to applying in virtually all cases, these enhancements suffer other flaws as well. *Diaz*, 2010 WL 2640630 at *4. For example, as noted above, the Sentencing Commission has noted that the use of a computer

enhancement fails to distinguish between serious commercial distributors of online pornography and more run-of-the-mill users like Rimmer. *See Dorvee*, 604 F.3d at 95-96. This enhancement is logically flawed because online pornography generally comes from the same pool of images found in print format. *See Hanson*, 561 F.Supp.2d at 1009-10. The number of images enhancement is also questionable because offenders are able to readily obtain the necessary number of images for even the two-level enhancement with minimal effort as a result of internet swapping. *See id*. at 1010.

These three enhancements alone add six-levels to Rimmer's base offense level. But for these enhancments that apply in almost every child pornography offense, Rimmer's sentencing guideline range would be 37-46 months – almost half of the current guideline recommendation.

## III.  CONCLUSION

While Rimmer has been convicted of serious offenses that need to be punished, the sentencing guidelines in this case yield a sentence "greater than necessary" to achieve the goals of § 3553(a). The mandatory minimum sentence of 60-months required under the statute is more than enough to punish Rimmer and address the other goals of sentencing as outlined above. Accordingly, it is appropriate to vary from the guidelines in this case and impose a sentence of sixty months.

                                            Respectfully submitted,

                                            GARY LEE RIMMER
                                            By Counsel

Counsel:
S/Andrea L. Harris
Asst. Federal Public Defender
VSB 37764

401 E. Market Street, Suite 106
Charlottesville, VA 22902
Tel (434) 220-3387
Counsel for Defendant

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: counsel of record; and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: none.

S/Andrea L. Harris